OPINION OF THE COURT
Simons, J.
This is a special proceeding instituted pursuant to CPLR 6221 to determine adverse claims to attached property. The disputed property consists of funds and assets held by respondent Bank Leumi Trust Company of New York. Petitioner, First Commercial Bank, claims the proceeds because Bank Leumi accepted drafts it presented in the amount of $70,978.50 which had been drawn in connection with a letter of credit. Respondent Gotham Originals, Inc., the customer of Bank Leumi which obtained the letter of credit, claims that Bank Leumi may not transfer the proceeds because the court enjoined it from doing so before it honored the drafts. Petitioner bases its claim to the funds on the provisions of Uniform Commercial Code § 4-303 (1) (a)[1] which provides that legal process comes too late to suspend the bank’s duty to pay an item if it comes, as this order did, after the bank has accepted it. Gotham contends, however, that the restraining order was timely under section 5-114 (2) (b) of the Code[2] because the order was served upon the Bank before it *292 honored the drafts. The Code defines honor as “to pay or to accept and pay” (Uniform Commercial Code § 1-201 [21]). Thus, the order was untimely under section 4-303 because Bank Leumi had accepted the drafts before enjoined but timely under section 5-114 because it had not yet honored them. The Appellate Division held that under these circumstances section 4-303 prevails.* *[3] We agree and therefore affirm its order.
*291 “(1) Any * * * legal process served upon * * * a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank’s right or duty to pay an item or to charge its customer’s account for the item, comes too late to so terminate, suspend or modify such right or duty if the * * * legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following:
“(a) accepted or certified the item”.
*292 I
In June 1981 respondent Gotham Originals, Inc. agreed to purchase approximately 24,000 pairs of ladies leather and snakeskin shoes from Teng Shih Industries Company, Ltd., and other Taiwanese shoe manufacturers. To finance the purchase, it obtained an irrevocable letter of credit from Bank Leumi designating Teng Shih Industries as beneficiary and petitioner First Commercial Bank, a banking corporation organized under the laws of the Republic of China and having its principal place of business in Taipei, as advising bank. The total amount of the letter of credit, as amended, was $172,026. It was transferrable and contained an expiration date of September 5, 1981. On September 10, 1981, R. Bore International, Inc., a transferee beneficiary of Teng Shih Industries, negotiated to petitioner two drafts in the amount of $70,978.50, payable on sight 60 days from date, together with the other documents required by the letter of credit. Petitioner paid for the drafts in Taiwanese currency and credited the amounts to R. Bore’s checking account although it did so “under reserve” because the letter of credit had expired on September 5, 1981. On September 21st, Bank Leumi received from petitioner the two drafts, the required documentation and transmittal letters and a request for payment of the drafts on Gotham’s letter of credit. Petitioner disclosed the discrepancy in the expiration date, noted that it h ad negotiated the drafts “under reserve” and requested advice as to when it could lift the reserve and make final payment to R. Bore. Bank Leumi subsequently obtained a waiver of the discrepancy in the expiration date from Gotham and on September 24th. it *293 notified petitioner by letter that the drafts had been accepted and that payment would be made on November 23, 1981.
After Bank Leumi had accepted the drafts, but before it had paid them, Gotham instituted an action against Teng Shih, R. Bore and the other shoe manufacturers-sellers in Supreme Court, New York County, claiming they had sold it worthless merchandise and charging them with fraud and breach of contract. It simultaneously obtained a temporary restraining order enjoining Bank Leumi from transferring the letter of credit or any moneys or assets of the sellers and sought orders attaching the proceeds of the drafts. After the restraining order was served on Bank Leumi and the attachment was perfected, Bank Leumi refused to pay petitioner.
Petitioner first attempted to recover the funds by a plenary action against Bank Leumi and the bank, in turn, impleaded Gotham. Petitioner then moved for summary judgment and when its motion was denied it commenced this proceeding. In it petitioner seeks to vacate and discharge the restraining order and the orders of attachment, to void the Sheriff’s levy and to obtain a determination that section 4-303 of the Code controls this transaction and requires Bank Leumi to pay the accepted drafts. Before answering, Gotham moved to dismiss the petition contending that it failed to state a cause of action and that granting the relief sought would violate a prior order of the same court (i.e., the order denying petitioner summary judgment in the plenary action). It requested leave to answer if its motion was denied. Bank Leumi appeared and answered the petition.
On November 15, 1983 Special Term granted Gotham’s motion and dismissed the petition holding that (1) petitioner’s plenary action involved the same parties and issues and was still pending, (2) no judgment had been obtained in it, which it viewed as a necessary predicate to a CPLR 6221 petition, and (3) petitioner failed to name as necessary parties the defendants in the Gotham action and the Sheriff of New York City.
The Appellate Division, First Department, unanimously reversed and granted the petition (101 AD2d 790). It held that there were no procedural bars to reaching the merits and, on the merits, it held that the attachment order was untimely under Uniform Commercial Code § 4-303 and was therefore ineffective to terminate or suspend Bank Leumi’s duty to pay the accepted drafts.
*294 II
The purpose of a letter of credit is to substitute for, and therefore support, an engagement to pay money. Letters of credit are used in various ways in modern business practice, but when used in the traditional manner to finance a sale of goods, the credit subsumes a separate agreement by a buyer to pay money to a seller (for illustrations of other uses see J. White & R. Summers, Handbook on Uniform Commercial Code § 18-1, at 708-09 [2d ed]). By issuing a letter of credit, the issuer undertakes an obligation to pay the beneficiary, or his transferee if the letter is negotiable, from the account of its customer. Thus, a commercial letter of credit transaction involves three separate contractual relationships and undertakings: first, the underlying contract for the purchase and sale of goods between the customer (the buyer, Gotham in this case) and the beneficiary (the seller Shih); second, the agreement between the issuer (Bank Leumi), customarily a bank but frequently some other institution or person, and its customer (Gotham) in which the issuer typically agrees to issue the letter of credit in return for its customer’s promise to reimburse it for any payments made under the credit plus a commission; and third, the letter of credit itself which is an engagement by the bank or other issuer that it will honor drafts or other demands for payment presented by the beneficiary or a transferee beneficiary upon compliance with the terms and conditions specified in the credit (see, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258-259; Uniform Commercial Code § 5-103 [1] [a]; see also, Voest-Alpine Intl. Corp. v Chase Manhattan Bank, 707 F2d 680, 682 [2d Cir]; PLI, Letters of Credit and Bankers’ Acceptances 13-14 [1984]; J. White & R. Summers, Handbook on Uniform Commercial Code § 18-1, at 704, 708-10 [2d ed]).
The fundamental principle governing these transactions is the doctrine of independent contracts. It provides that the issuing bank’s obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement (see, Uniform Commercial Code § 5-114 [1]; J. White & R. Summers, Handbook on Uniform Commercial Code § 18-2, at 711-13 [2d ed]). Stated another way, this principle stands for “the fundamental proposition * * * that all parties [to a letter of credit transaction] deal in documents rather than with the facts the documents purport to reflect” (H. Harfield, Letters of Credit 76 [ALI-ABA Uniform Commercial *295 Code Practice Handbook 1979]; see, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 259, supra; Uniform Commercial Code § 5-114 [1]; Uniform Customs and Practice for Commercial Documentary Credits [UCP], promulgated by the International Chamber of Commerce, General Provisions and Definitions [c] and art 9). Thus, the issuer’s obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. It is not required to resolve disputes or questions of fact concerning the underlying transaction.
A limited exception to this rule of independence is provided in section 5-114 of the Code[4] (see also, Sztejn v Schroder Banking Corp., 177 Misc 719). Under the general rule the issuer must honor the draft when the documents presented comply with the terms of the letter of credit (Uniform Commercial Code § 5-114 [1]). But when a required document does not conform to the necessary warranties or is forged or fraudulent or there is fraud in the transaction, an issuer acting in good faith may, but is not required to, refuse to honor a draft under a letter of credit when the documents presented appear on their face to comply with the terms of the letter of credit. Further than that, a customer may also enjoin an issuer from honoring such a draft if the issuer fails to do so on its own (Uniform Commercial Code § 5-114 [2] [b]; see, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 259, supra; Harfield, Practice Commentary, McKinney’s Cons Laws of NY, Book 62V2, Uniform Commercial Code § 5-114, pp 686-688). Notwithstanding this exception, if the person presenting a draft drawn on a letter of credit is a holder in due course (see, Uniform Commercial Code § 3-302), the issuer must pay the draft, whether it has notice of forgery or fraud or not (see, United Bank v Cambridge Sporting Goods Corp., supra, p 259; Uniform Commercial Code § 5-114 [2] [a]).
Thus, if petitioner had taken the drafts under circumstances which made it a holder in due course, it would have acquired greater rights than the beneficiary and Bank Leumi would be obligated to honor the drafts despite Gotham’s allegations of fraud in the transaction. Petitioner has neither pleaded nor proved its status as a holder in due course, however. Indeed it asserts that its status as such is irrelevant and maintains that it is entitled to recover on the facts presented in any event.
*296 Petitioner was initially designated as an advising bank and stood in a neutral position; its only obligation was to convey accurate information of the issuance, amendment and terms and conditions of the credit to its beneficiaries (see, Uniform Commercial Code § 5-103 [1] [e]; H. Harfield, Letters of Credit 10-111; PLI, Letters of Credit and Bankers’ Acceptances 43). By purchasing the signed drafts drawn under the letter of credit by the transferee-beneficiary, R. Bore, it became a negotiating bank and because of Bank Leumi’s express engagement in the letter of credit to honor drafts presented by a negotiating bank, petitioner acquired rights against Bank Leumi, as issuer, “to the same extent as if it were named as beneficiary of the credit” (H. Harfield, Letters of Credit 14; see, PLI, Letters of Credit and Bankers’ Acceptances 45-46).
Thus, although the parties agree subdivision (2) (b) is the provision of section 5-114 pertinent to this appeal because petitioner does not claim to be a holder in due course, they disagree on its significance. Gotham contends that the court was authorized to enjoin payment of the drafts pursuant to it because there was fraud in the transaction. Petitioner asserts that section 4-303 prevails in the case of conflict and that because the drafts were accepted before the restraining order was issued or served on Bank Leumi, its rights became fixed and are paramount to Gotham’s, notwithstanding its status and the statutory authorization to enjoin payment found in section 5-114.
in
Section 4-102 of the Code specifically provides that if the provisions of article 4 conflict with those of article 3 then article 4 shall govern and that if they conflict with the provisions of article 8 then the provisions of article 8 shall govern. It contains no similar provision with respect to a conflict with the provisions of article 5 nor does any section in article 5 deal with the conflict. The controlling language must be found in section 4-303 (1). It states that any legal process served upon a payor bank, “whether or not effective under other rules of law” to terminate or suspend the bank’s duty to pay the item comes too late to terminate or suspend that duty if the bank has previously accepted the item (Uniform Commercial Code § 4-303 [1] [a]). Section 5-114 contains no similar provision. Indeed, the Legislature made clear that article 5 and the UCP do not control every aspect of a transaction that involves a letter of credit when :it provided that article 5 was intended to deal “with some but not all of the rules and concepts of letters of credit” (Uniform Commercial Code § 5-102 [3]; see, J. White & R. Summers, *297 Handbook on Uniform Commercial Code § 18-2, at 711 [2d ed]). Accordingly, section 4-303, by its terms, supersedes section 5-114 and when Bank Leumi accepted the drafts on September 24, 1981, it became directly, primarily and unconditionally obligated to the holder to pay them at maturity (Uniform Commercial Code § 3-413 [1]; see, United States Rail Co. v Wiener, 169 App Div 561; PLI, Letters of Credit and Bankers’ Acceptances 231-32; for the definition of “acceptance” see Uniform Commercial Code § 3-410 [1]). Because the restraining order was served on it on October 30, 1981, 36 days after the act of acceptance, it came “too late” to prevent payment to petitioner. .
This view is reinforced by authorities holding that article 4 continues to apply in letter of credit transactions to the rights and liabilities on documentary drafts (see, Continental Time Corp. v Merchants Bank, 117 Misc 2d 907, 909; PLI, Letters of Credit and Bankers’ Acceptances 231-36; J. White & R. Summers, Handbook on Uniform Commercial Code § 18-3, at 718 [2d ed]; Farnsworth, Documentary Drafts Under the Uniform Commercial Code, 22 Bus Law 479, 480). So, also, in Key Intl. Mfg. v Stillman (103 AD2d 475), the Appellate Division, Second Department, noted that it was improper for the lower court to restrain the issuing bank from paying cashier’s checks it had previously issued to the beneficiary following presentment of a draft and necessary documents under a letter of credit. A cashier’s check is accepted upon its issuance (Dziurak v Chase Manhattan Bank, 44 NY2d 776, 777) and therefore the court, citing section 4-303 (1) (a) of the Code, stated that the restraining order was not timely (Key Intl. Mfg. v Stillman, supra, p 479). Similarly, in Voest-Alpine Intl. Corp. v Chase Manhattan Bank (707 F2d 680, supra), the Second Circuit, applying New York law, reversed and remanded an award of summary judgment for a confirming bank[5] in an action by the beneficiary of a letter of credit, because there was an issue of fact whether the bank had accepted the beneficiary’s drafts prior to its refusal to pay them (707 F2d, at pp 685-686). Implicit in the court’s decision is the determination that if the bank had accepted the drafts, it would be precluded from subsequently refusing payment.
Important policy considerations suggest the result also. Letters of credit provide a quick, economic and predictable means of *298 financing transactions for parties not willing to deal on open accounts by permitting the seller to rely not only on the credit of the buyer but also on that of the issuing bank. By its terms, the credit often reflects a conscious negotiation of risk allocation between customer and beneficiary and its utility rests heavily on strict adherence to the agreed terms and the doctrine of independent contract (see, J. White & R. Summers, Handbook on Uniform Commercial Code § 18-1, at 704-08 [2d ed]). It is this predictability of credit arrangements which permits not only the financing of sale of goods transactions between widely separated parties in different jurisdictions but also has permitted the development of a market in trade or bankers’ acceptances of time drafts. Once a draft payable in the future is accepted by a bank, it becomes known as a bankers’ acceptance, and such acceptances can be, and regularly are, sold in conjunction with letter of credit transactions to obtain financing prior to the date of maturity in a market sanctioned by the Federal Reserve Board (see, 12 USC § 372; PLI, Letters of Credit and Bankers’ Acceptances 231-34, 236). If the courts intervene to enjoin issuing banks from paying drafts they have previously accepted they seriously undermine this market and limit the use of acceptances as a financing tool.
IV
Our decision in United Bank v Cambridge Sporting Goods Corp. (41 NY2d 254, supra) does not compel a contrary conclusion. In United Bank, the presenters claimed to be holders in due course and asserted their right to payment under section 5-114 (2) (a). They did not rely on section 4-303 as a basis for relief and we expressly noted that the petitioning banks did not “dispute the validity of the prior injunction” and that we did not reach “the question of the availability and the propriety of this relief” (41 NY2d, at p 260).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Meyer, Kaye and Alexander concur.
Order affirmed, with costs.

. Section 4-303 provides:

. Section 5-114 (2) provides:
“(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit "but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7-507) or of a certificated security (Section 8-306) or is forged or fraudulent or there is fraud in the transaction
“(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3-302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Section 7-502) or a bona fide purchaser of a certificated security (Section 8-302); and
*292 “(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor” (emphasis added).

. Article 4 of the Uniform Commercial Code governs bank deposits and collections and applies to this case because the issuer of the letter of credit was a bank. Letters of credit may be issued by parties other than banks, however, and article 4 of the Uniform Commercial Code and part III of this opinion would not apply to such persons.

. Although the letter of credit at issue here was expressly made subject to the Uniform Customs and Practice which would therefore make article 5 inapplicable (see, Uniform Commercial Code § 5-102 [4]), we have previously indicated that “the Uniform Customs and Practice, where applicable, does not bar the relief provided for in section 5-114 of the code” (United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258, n 2).

. A “confirming bank” engages that it will honor a letter of credit issued by another bank or that the letter of credit will be honored by the issuer (Uniform Commercial Code § 5-103 [1] [f]) and thus “becomes directly obligated on the credit to the extent of its confirmation as though it were its issuer and acquires the rights of an issuer” (Uniform Commercial Code.§ 5-107 [2]; see, Venizelos, S.A. v Chase Manhattan Bank, 425 F2d 461, 465 [2d Cir]).