UNION EXPORT COMPANY,
Plaintiff–Appellee,

v.

N.I.B. INTERMARKET, A.B.,
Defendant,

and

First American National Bank,
Defendant–Appellant.

FIRST AMERICAN NATIONAL BANK,
Counter–plaintiff–Appellant,

v.

UNION EXPORT COMPANY,
Counter–defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

March 5, 1990.

Frank H. Reeves, Nashville, for appellant.

John C. Speer, Michael C. Patton, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Nashville, for appellee.

DROWOTA, Chief Justice.

This case involves an international letter of credit. Union Export Company (Union) had First American National Bank (First American) issue an irrevocable letter of credit in the amount of $345,000 to N.I.B. Intermarket, A.B. (N.I.B.), a Swedish exporter, to insure payment for calcium chloride that Union had purchased from N.I.B. In this appeal, First American argues that the Court of Appeals erred in affirming the Chancellor's issuance of a permanent injunction enjoining First American from paying a draft drawn pursuant to the letter of credit. Union also appeals, arguing that the injunction was proper but that it was error for the Court of Appeals to remand the case to the trial court for a determination of whether a Swedish bank, to whom the draft had been negotiated before it was presented to First American, was a holder in due course. For the reasons that follow, we reverse the decision of the Chancellor and the Court of Appeals.

I.

Union commenced this action against N.I.B. and First American, seeking, as to N.I.B., damages for breach of contract, and, as to First American, a temporary restraining order and a permanent injunction barring First American from honoring a $345,000 letter of credit issued on Union's account in favor of N.I.B., as well as attachment of any proceeds of the letter of credit owing to N.I.B. The trial court granted Union a temporary restraining order on April 29, 1987, and a preliminary injunction on June 17, 1987.

Thereafter, First American filed its answer and a counterclaim in which it sought

to have the preliminary injunction vacated. First American also sought a judgment against Union for Union's reimbursement obligation once First American paid the draft it had accepted under the letter of credit.

Union then moved for a partial summary judgment against First American, requesting that the injunction in its favor be made permanent. First American also filed a motion for summary judgment, in which it alleged that Union owed it reimbursement for Union's liability under the letter of credit.

The Chancellor held a hearing on both motions for summary judgment, after which he granted Union's motion, permanently enjoining First American from making any payment under the letter of credit. In so doing, the trial court found that there was fraud in the underlying transaction, that fraudulent documents had been presented to First American, and that the fraud perpetrated by N.I.B. entitled Union to have payment of the draft drawn under the letter of credit permanently enjoined under Tenn.Code Ann. § 47–5–114(2).

First American subsequently moved to alter or amend the judgment and also sought an indemnity bond from Union in the amount of $345,000 plus ten percent (10%) interest from June 18, 1987, payable in the event that Union succeeded in its appeal. The Chancellor denied this motion.

First American then appealed to the Court of Appeals. The Court of Appeals sustained the Chancellor's provision of injunctive relief but ordered that the case be remanded to the trial court and that an attempt be made to join Skanska Banken, a Swedish bank, a claimant to First American's enjoined acceptance, as a party. The Court of Appeals held that if Skanska could prove it were a holder in due course, then, under § 47–5–114(2)(a) the injunction must be vacated.

## II.

The facts in this case are undisputed. Sometime prior to August 26, 1986, Union, a Nashville based company, agreed to purchase 1500 metric tons of calcium chloride, a chemical used in snow removal, from N.I.B., a Swedish exporter. In order to guarantee payment, Union had First American issue N.I.B. an irrevocable letter of credit in the amount of $345,000. The letter of credit required the presentment of a draft payable 150 days after sight along with certain other documents.

On December 1, 1986, First American received from Skanska Banken (Skanska) a $345,000 time draft, drawn and endorsed in blank by N.I.B., together with other documents, all of which complied with the letter of credit. First American accepted the draft on December 1, 1986 by affixing its signature thereto, and on the next day, December 2, sent notice of its acceptance by Telex to Skanska. The acceptance had a maturity date of April 30, 1987.

Upon receiving notice of the acceptance, Skanska made two loans to N.I.B. totaling $345,000, taking as security N.I.B.'s claim under the letter of credit.

In February, 1987, Union notified First American that the shipment of chemicals it purchased from N.I.B. was defective. Because First American indicated it would pay its acceptance when it matured, Union commenced this action.

## III.

■ A commercial letter of credit transaction involves three separate contractual relationships: (1) the underlying contract between the buyer (in this case, Union) and the seller (N.I.B.); (2) the agreement between the issuer (First American) and its customer (Union) in which the issuer agrees to issue the letter of credit in return for the customer's promise to reimburse it and pay a commission; and (3) the letter of credit itself which is an engagement by the issuer that it will honor drafts presented by the beneficiary or a transferee beneficiary upon compliance with the terms and conditions specified in the letter of credit. *See First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 486 N.Y.S.2d 715, 475 N.E.2d 1255 (1985); Tenn.Code Ann. § 47–5–103(1)(a); J. White & R. Summers,

Uniform Commercial Code § 19–2 (3d. ed. 1988).

The fundamental principle governing these transactions is the doctrine of independent contracts, which provides that the issuing bank's obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement. *First Commercial Bank v. Gotham Originals, Inc.*, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259; Tenn.Code Ann. § 47–5–114(1); J. White and R. Summers, Uniform Commercial Code, § 19–2 (3d ed. 1988).

In the case at bar, both the trial court and the Court of Appeals found that the injunction against payment under the letter of credit was proper under the limited exception to the doctrine of independence found at Tenn.Code Ann. § 47–5–114(2), which provides:

(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (§ 47–7–507) or of a security (§ 47–8–306) or is forged or fraudulent or there is fraud in the transaction:

(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and *under circumstances which would make it a holder in due course* (§ 47–3–302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (§ 47–7–502) or a bona fide purchaser of a security (§ 47–8–302); and

(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or oth-

er defect not apparent on the face of the documents *but a court of appropriate jurisdiction may enjoin such honor.*

[Emphasis Supplied]

Under the general rule the issuer *must* honor the draft when the documents presented comply with the terms of the letter of credit. Tenn.Code Ann. § 47–5–114(1). Under this limited exception of § 47–5–114(2), however, when a required document does not conform to the necessary warranties, is forged, is fraudulent, or there is fraud in the transaction, an issuer acting in good faith is not required to, but *may* honor a draft drawn under a letter of credit if the documents presented appear on their face to comply with the terms of the letter of credit. In addition, a court may enjoin an issuer from honoring such a draft if the issuer fails to do so on its own. Tenn.Code Ann. § 47–5–112(2)(b); *First Commercial Bank v. Gotham Originals, Inc.*, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259. Notwithstanding this exception, if the person presenting a draft drawn on a letter of credit is a holder in due course (Tenn.Code Ann. § 47–3–302), the issuer *must* pay the draft, whether or not it has notice of forgery or fraud. Tenn.Code Ann. § 47–5–114(2)(a); *First Commercial Bank v. Gotham Originals, Inc.*, 486 N.Y. S.2d at 719, 475 N.E.2d at 1259; *United Bank v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 360 N.E.2d 943, 392 N.Y.S.2d 265. (1976)

In this case, the element of fraud is undisputed. For this reason, the Chancellor enjoined payment under Tenn.Code Ann. § 47–5–114(2)(b). The Court of Appeals remanded for a determination of whether Skanska, to whom the draft had been negotiated, is a holder in due course, and thus entitled to the proceeds under Tenn.Code Ann. § 47–5–114(2)(a) despite the element of fraud.

First American appeals this decision, arguing that the injunction is inappropriate regardless of whether or not Skanska is a holder in due course because the injunction was issued after First American accepted

the time draft, and thus was untimely under Tenn.Code Ann. § 47–4–303.

Tenn.Code Ann. § 47–4–303(1) provides in relevant part:

(1) Any ... legal process served upon ... a payor bank, *whether or not effective under other rules of law* to terminate, suspend, or modify the bank's right or duty to pay an item or to charge the customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the ... legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following: "(a) accepted or certified the item."

[Emphasis added.]

Acceptance is defined in § 47–3–410(1) as:

(1) Acceptance is the drawee's signed engagement to honor the draft as presented. It must be written on the draft, and may consist of his signature alone. It becomes operative when completed by delivery or notification.

In the case at bar, it is undisputed that First American is the payor bank, and that it accepted the draft within the meaning of Tenn.Code Ann. § 47–3–410(1) prior to the issuance of legal process. Union argues that the injunction was timely, because Tenn.Code Ann. § 47–5–114(2)(b) provides that "a court ... may enjoin such honor," and "honor" is defined in the general definitional section of the U.C.C. as "to pay or to accept and pay." Tenn.Code Ann. § 47–1–201(21). Thus, there is an apparent conflict between Tenn.Code Ann. § 47–5–114(2)(b) and Tenn.Code Ann. § 47–4–303 under the facts of this case.

Article 4 of the U.C.C. governs bank deposits and collections. Tenn.Code Ann. § 47–4–101. Section 102 of article 4 specifically provides that if provisions in article 4 conflict with those in article 3 then article 4 governs, but in the event article 4 provisions conflict with article 8, then article 8 governs. There is no provision in the Code providing which article would apply in the event of a conflict between articles 4 and 5.

In *First Commercial Bank v. Gotham Originals, Inc.,* 486 N.Y.S.2d at 720, 475 N.E.2d at 1260, the New York Court of Appeals held that § 4–303 governed. It relied on the express language of § 4–303(1), which states "whether or not effective under other rules of law" legal process is not effective under the specified circumstances. The Court found further support from the language of § 5–102(3) and comment (2) thereto, on the limited controlling authority of article 5.

The facts in *Gotham Originals* are similar to the facts in the present case. The issuing bank accepted two drafts drawn under a letter of credit. The drafts were payable after sight in 60 days. After acceptance, but before payment, the customer discovered fraud in the transaction, and the trial court enjoined the issuer from payment. The intermediate appellate court reversed and vacated the injunction, and the Court of Appeals affirmed, both acting under § 4–303.

In addition to holding that § 4–303 prevailed by its own terms, the Court noted the following policy reason supporting the result:

Important policy considerations suggest the result also. Letters of credit provide a quick, economic and predictable means of financing transactions for parties not willing to deal on open accounts by permitting the seller to rely not only on the credit of the buyer but also on that of the issuing bank. By its terms, the credit often reflects a conscious negotiation of risk allocation between customer and beneficiary and its utility rests heavily on strict adherence to the agreed terms and the doctrine of independent contract (*see,* J. White & R. Summers, Handbook on Uniform Commercial Code § 18–1, at 704–08 [2d ed.]). It is this predictability of credit arrangements which permits not only the financing of sale of goods transactions between widely separated parties in different jurisdictions but also has permitted the development of a market in trade or bankers' acceptances of time drafts. Once a draft payable in the future is accepted by a bank, it becomes known as a bankers'

acceptance, and such acceptances can be, and regularly are, sold in conjunction with letter of credit transactions to obtain financing prior to the date of maturity in a market sanctioned by the Federal Reserve Board (*see*, 12 U.S.C. § 372; PLI, Letters of Credit and Bankers' Acceptances 231–34, 236). If the courts intervene to enjoin issuing banks from paying drafts they have previously accepted they seriously undermine this market and limit the use of acceptances as a financing tool.

*Id.*, 486 N.Y.S.2d at 721, 475 N.E.2d at 1261.

The same policy considerations apply in Tennessee. We therefore hold that, under Tenn.Code Ann. § 47–4–303(1), Union's injunction against payment of the time draft drawn pursuant to the letter of credit was untimely because it was issued after First American had already accepted the draft. We therefore reverse the decision of the Court of Appeals, and we order the injunction vacated.

### IV.

■ Union next argues that, should the injunction be vacated, the proceeds owing to N.I.B. under the letter of credit are subject to attachment since they represent personal property of either legal or equitable nature. Tenn.Code Ann. § 29–6–132. Attachment of the proceeds would also enable Union to obtain Tennessee jurisdiction over N.I.B. as an out-of-state defendant pursuant to Tenn.Code Ann. § 29–6–101(1).

For the same reasons we above vacated the injunction against payment of the draft drawn under the letter of credit, we now hold that Union is not entitled to an attachment of the letter of credit's proceeds. The attachment issued after First American accepted the draft, and thus is invalid under Tenn.Code Ann. § 47–4–303.

Accordingly, the judgment of the Court of Appeals is reversed, and the trial court's injunction against the payment of the accepted time draft drawn pursuant to Union's letter of credit is hereby vacated. Costs will be taxed to Union Export Company.

COOPER, HARBISON and O'BRIEN, JJ., and CORNELIUS, Special Judge, concur.

### ORDER

PER CURIAM.

On January 12, 1990, Union Export Company (Union), Plaintiff–Appellee, filed a motion pursuant to Rule 14, Tennessee Rules of Appellate Procedure, asking this Court to consider facts which occurred after the order of the trial court was entered. Specifically, Union asks this Court to recognize that after the final order was entered in the trial court, N.I.B. Intermarket, A.B. (N.I.B.) went into bankruptcy. Union submits that the bankruptcy of N.I.B. affects the position of the parties and the subject matter of this action.

On January 12, 1990, Union Export Company, pursuant to Rule 39 T.R.A.P., filed a petition asking this Court to reconsider its opinion of January 2, 1990, pointing out that this Court was obviously unaware of the bankruptcy of N.I.B. and this Court in Section IV of its opinion held that Union failed to show that irreparable harm would occur if the injunction was not issued. Union asks this Court to consider the post-judgment fact that N.I.B. is in bankruptcy. Counsel states that in First American National Bank's (First American) brief to the Court of Appeals it argued that there was no proof that Union would have suffered irreparable injury if First American was allowed to honor the draft on the letter of credit. It is counsel's *recollection* that at oral argument before the Court of Appeals the issue of irreparable harm was raised and that it was disclosed that N.I.B. was in bankruptcy.

This Court was unaware of N.I.B.'s bankruptcy and we accordingly grant Union's Motion for Consideration of Post–Judgment Facts and also grant Union's Motion to Reconsider in light of the post-judgment facts.

Upon reconsideration of our opinion of January 2, 1990, we omit Section IV, dealing with irreparable harm, in its entirety.

Our opinion of January 2, 1990 is withdrawn and we are this date filing a new opinion which deletes Sections IV and V and substitutes a new Section IV.

It is therefore, ORDERED, ADJUDGED and DECREED that this Court's opinion dated January 2, 1990 be withdrawn and the opinion filed this date shall become the opinion of the Court in this cause.