■ ALBERT R. PAULL, JR., et al., Doing Business as PIONEER HOMES, Respondents, v NORSTAR BANK OF UPSTATE NEW YORK, Appellant-Respondent, and DONALD S. ROGERS, Doing Business as ROGERS WOOD PRODUCTS, Appellant.—Yesawich Jr., J. Appeal from an order and judgment of the Supreme Court (Dier, J.), entered December 20, 1991 in Warren County, which, inter alia, granted plaintiffs' motion for a directed verdict against defendant Norstar Bank of Upstate New York and granted defendant Norstar Bank of Upstate New York's motion for a directed verdict on its cross claim against defendant Donald S. Rogers.

Plaintiffs own and operate Pioneer Homes, a log home construction and sales business in Warren County. Anticipating contracting with defendant Donald S. Rogers for the manufacture of logs and log siding, plaintiffs submitted an application on November 1, 1989 to defendant Norstar Bank of Upstate New York for a standby letter of credit in the amount of $15,000, naming Rogers as beneficiary. The standby letter of credit, which was provided by plaintiffs to enable Rogers to obtain financing from the latter's bank to purchase equipment and tooling necessary to fashion logs to plaintiffs' order, was to expire on November 1, 1990. The funds reflected by the letter of credit were to be accessible only upon a

showing by Rogers that plaintiffs had failed to purchase $15,000 worth of products within the year ending on that date. A sheet titled "pro-forma of conditions", signed by a coproprietor of Pioneer Homes, was also submitted with the standby letter of credit application; one of its three conditions provided that "[s]hould demand for nonperformance be made [plaintiffs] will have a thirty day grace period to fulfill the commitment". Norstar issued the letter of credit, which did not mention the "grace period", and on April 20, 1990 plaintiffs and Rogers entered into a contract (hereinafter the manufacturer's agreement) for the manufacture and purchase of log products in accordance with plans, specifications and designs furnished by plaintiffs.

On April 30, 1990, plaintiffs sent Rogers a $2,000 deposit and an order, including prices and an estimated delivery date of June 1, 1990 for logs to build a single house; these products were delivered and the balance of payment was received on June 17, 1990. Plaintiffs placed no further orders until October 16, 1990, at which time they sent Rogers a letter outlining their product needs for another house about which plaintiffs would contact Rogers "when we get closer to a defenite [sic] time of delivery". No deposit accompanied this letter. On October 29, 1990, Rogers presented the letter of credit, along with a statement that plaintiffs had purchased only $7,027.20 worth of products—the amount paid for the June delivery— during the year, to National Bank and Trust Company. The documents were thereafter submitted to Norstar and, on November 2, 1990, Norstar paid $7,972.80 to National Bank and Trust, Rogers' assignee, and debited plaintiffs' account in that amount.

By letter dated November 2, 1990, plaintiffs thereafter attempted to order additional log products from Rogers, to be picked up on November 12, 1990, claiming that the $7,972.80 paid by Norstar pursuant to the letter of credit had been an "advance payment" on this new order; Rogers did not fill the latter order or the one of October 16, 1990, on which plaintiffs had not requested delivery. Plaintiffs then brought this action against Norstar and Rogers alleging, *inter alia,* that Norstar had breached the terms of the credit agreement by not including the 30-day "grace period" in the letter of credit, and that Rogers had wrongfully obtained payment on the letter of credit. Rogers and Norstar answered, and asserted cross claims against each other for indemnification or contribution. After issue was joined, plaintiffs and Norstar each moved for summary judgment; both motions were denied and discovery

proceeded. A bench trial was held. At the close of plaintiffs' case, Norstar and Rogers moved for directed verdicts. Although plaintiffs did not so move, Supreme Court nonetheless directed a verdict in plaintiffs' favor against Norstar, apparently based on Norstar's admissions (see, CPLR 4401), from which Norstar appeals, and also directed a verdict in Norstar's favor against Rogers, from which Rogers appeals.

Initially, we note that the propriety of Norstar's payment on the letter of credit itself is not disputed. When presented with documentation which, on its face, indicated that the terms of the letter were satisfied, Norstar was bound to pay Rogers accordingly (see, First Commercial Bank v Gotham Originals, 64 NY2d 287, 294-295). At issue is whether plaintiffs have established a prima facie case either against Norstar, for breach of the terms of the standby letter of credit agreement, or against Rogers, for breach of the manufacturer's agreement or for wrongfully obtaining payment under the standby letter of credit.

With respect to the claims against Rogers, the record reveals that plaintiffs did not present sufficient evidence to demonstrate, prima facie, their entitlement to recover. Plaintiffs' contrary argument notwithstanding, their October 16, 1990 letter did not constitute a "purchase" as that term is contemplated by the manufacturer's agreement. The manufacturer's agreement, which sets forth plaintiffs' obligation, states that plaintiffs are bound to purchase only that which has been ordered, and then only after delivery and inspection; this indicates that a mere order, while it may be a contract to purchase, does not itself equate to a purchase. Furthermore, any delay in delivery was occasioned not by Rogers but by plaintiffs, who reserved the right to set the delivery time.* Because plaintiffs did not purchase $15,000 worth of logs from Rogers within the year, Rogers was entitled to exercise his right to payment in accord with the express terms of the letter of credit.

As for the claims brought against Norstar, we find that plaintiffs have not made a prima facie showing that Norstar, in failing to include the "grace period" in the letter of credit, breached the agreement set forth in the standby letter of credit application. Although plaintiffs testified that the "pro-

---

* In this regard, it is worth noting that the foundation for this house had not yet been completed at the time of trial and, further, that plaintiff Albert R. Paull, Jr.'s testimony established that plaintiffs did not intend to take delivery until the foundation was prepared.

forma of conditions" were discussed when the standby letter of credit application was drafted, and presented evidence that the supplemental sheet containing those conditions was ultimately forwarded to the bank employee who prepared the standby letter of credit, they put forth no proof that it was attached to or part of the application when it was signed and became binding upon the parties. The sheet is not dated and, significantly, the preprinted application indicates, by means of a check box, that there were no supplemental materials attached; absent contrary evidence, we must presume that the statement was correct at the time the application was signed (cf., *Marine Midland Bank v Idar Gem Distribs.*, 133 AD2d 525, 526). If the sheet was attached later, the signatures of plaintiffs alone could not suffice to make the modifications binding on Norstar, as the standby letter of credit application provided that no changes could be made except in a writing signed by both the applicant and Norstar. Thus, plaintiffs have not established that the "pro-forma of conditions" was part of the contract between plaintiffs and Norstar, a necessary element of their claims.

Mikoll, J. P., Crew III, Mahoney and Harvey, JJ., concur. Ordered that the order and judgment is reversed, on the law, without costs, and judgment granted to defendants dismissing the complaint.