NEWPORT INDUSTRIES NORTH
AMERICA, INC., Plaintiff,

v.

BERLINER HANDELS UND FRANK-
FURTER BANK A/K/A BHF–
Bank, Defendant.

No. 95 Civ. 9153(LAK).

United States District Court,
S.D. New York.

April 9, 1996.

Stuart B. Pollack, Brooklyn, NY, for Plain-
tiff.

Eric J. Wallach and Daniel A. Ladow, Ro-
senman & Colin L.L.P., New York City, for
Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Newport Industries North America, Inc. ("Newport") sought to arrange a back-to-back purchase and sale of a large quantity of sugar. It structured the transaction so as to keep the buyer and the seller unaware of their respective identities lest they cut Newport out of the deal. Both the buyer and the seller put up earnest money and sought the same from Newport. Newport, however, sought to use the letters of credit posted by the buyer and the seller to avoid putting any of its own funds at risk. The plan did not work, ultimately because Newport refused to put up less than $8,000 of its own money to close this $3.45 million transaction, and the deal collapsed. So Newport now seeks to hold the defendant, Berliner Handels und Frankfurter Bank ("BHF–Bank"), liable for the profit it claims it would have earned. BHF–Bank moves to dismiss the complaint.

### Facts

Although this is a motion to dismiss the complaint, Newport has submitted a long, rambling and repetitious affidavit filled both with legal argument and facts *de hors* the complaint. The affidavit seeks leave to amend in the event the motion to dismiss is granted, although no proposed amended complaint is annexed. In all the circumstances, the Court treats the complaint as having been amended to embrace the factual assertions contained in the opposing affidavit and the motion as being directed to the complaint thus amended.

### The Punjab Letter of Credit

The story fundamentally is a simple one. In or about July 1994, Newport contracted to sell a large quantity of sugar to Oswal Sugars Limited ("Oswal") of Ludhiana, India, for $3,450,000. As the contract subsequently was amended, shipment was to be made by October 31, 1994.[1] Oswal thereupon opened a letter of credit in favor of Newport, as beneficiary, with Punjab National Bank (the "Punjab LC") in the full amount. Although the full text of the Punjab LC is not before

the Court, it appears that Newport would have had the right to draw on it assuming (1) the Punjab LC had been made operative, and (2) bills of lading and other required documents relating to the shipment had been presented. (*See* Cpt Ex. 1) On or about August 8, 1994, BHF–Bank, at the request of Punjab National Bank, advised and confirmed the Punjab LC to Newport.

The Punjab LC was to become operative "only upon receipt of Performance Bond/Standby Letter of Credit" for $50,000 by Midlantic National Bank NA ("Midlantic") "on account of the beneficiary [Newport] and acceptable to the openers." (Cpt Exs. 1, 2) As Newport acknowledges, the purpose of Oswal insisting on this condition was "to assure itself that the plaintiff was capable, serious and motivated to consummate the transaction" by subjecting itself to the risk that Newport would lose $50,000 to Oswal if the sugar was not shipped in accordance with the contract. (Jacobs Aff. ¶ 20)

Newport of course could have made the Punjab LC operative immediately by opening its own letter of credit or performance bond by Midlantic in the amount of $50,000. As events unfolded, however, it elected not to do so in the hope of putting someone else's money at risk instead of its own.

### The Mannah Letter of Credit

Newport did not have the sugar it contracted to sell to Oswal when it entered into the Oswal contract. (Jacobs Aff. ¶ 17) On or about August 26, 1994, Newport contracted to purchase the necessary sugar from Mannah Corp. ("Mannah") for $3,152,500, with shipment to be made by October 31, 1994. (Cpt ¶¶ 7–8) Thus, if everything went according to plan, Newport would have made the difference between the price it paid Mannah and the price at which it sold to Oswal, or $297,500. But that is not how things turned out.

Newport evidently found Mannah to be a motivated seller, so it persuaded Mannah to cause Midlantic, Mannah's bank, to issue a standby letter of credit in the amount of $62,000 (the "Mannah LC"), naming Newport

---

1. The shipment dates appear in the original and amended Punjab LCs. (Cpt Exs. 1, 2)

as beneficiary.[2]  (Jacobs Aff. ¶¶ 17, 21–22; Cpt Exs. 3, 4)  The Mannah LC provided, *inter alia,* that Newport as beneficiary could draw on the letter of credit in the event Mannah did not ship the sugar by October 31, 1994.  (Cpt Exs. 3–4)  The Mannah LC, however, like the Punjab LC, was inoperative.  It provided also in pertinent part that:

> "It is a condition of this letter of credit that it shall become operative upon receipt of a tested telex from BHF Bank, New York branch to Midlantic Bank (telex no. 825648) stating:
>
>> " '(1) A credit confirmed by BHF Bank has been transferred to (or partial proceeds thereof assigned to) Mannah Corporation in the amount of USD $3,152,-500.00.  Said credit shall provide for a shipment date through October 31, 1994 and shall allow for presentation of documents required by said credit within 21 days following the date of the bill(s) of lading (third party bills of lading are permitted).' "  (Cpt Exs. 3, 4)

*Newport's Effort to Consummate the Transaction*

Once the Mannah deal and Mannah LC were in place, there were two letters of credit, both inoperative.  In order to make the Punjab LC operative, Newport had to produce a $50,000 letter of credit issued by Midlantic and acceptable to Oswal.  In other words, it had to make the Mannah LC operative and obtain Oswal's acceptance of it.  In order to make the Mannah LC operative, it had to come up with a tested telex from BHF–Bank stating that a credit confirmed by BHF–Bank in the amount of $3,152,500 had been transferred or assigned to Mannah Corp.  Newport sought to achieve this by assigning to Mannah Corp. $3,152,500 of the proceeds of the Punjab LC.

In or about late September 1994,[3] Newport executed a form of assignment provided by BHF–Bank by which it directed BHF–Bank to pay the proceeds of the drawing on the Punjab LC, "if and when such drawing is honored by you," to Mannah Corp. up to an aggregate amount of $3,152,500.  It further requested that the bank advise Mannah Corp. of the bank's acceptance of the assignment.  (Cpt Ex. 5; Jacobs Aff. ¶ 30)  The form of assignment contained a space in which BHF–Bank was asked to indicated its acceptance of those instructions, but the copy of the document annexed to the complaint contains no signature in the space.  (Cpt Ex. 5)  Moreover, Newport claims that BHF–Bank's designated employee, Robert Hyland, refused to send the tested telex regarding the assignment of the proceeds of the Punjab LC because BHF–Bank had not received its fee for that service.  (Jacobs Aff. ¶ 31)  It goes on to assert that full assurance of payment of the fee was provided by an October 1, 1994 amendment to the Punjab LC, which provided that "[a]ll charges for confirmation, transfer or assignment of the LC are now to the account of openers," although the amendment further provided that the Punjab LC remained inoperative.  (Jacobs Ex. 7)  It does not contend that it ever obtained Oswal's acceptance of the Mannah LC.

Not surprisingly, Mannah Corp. ultimately failed to ship the sugar, evidently because the tested telex was not forthcoming.  The entire transaction collapsed.  Newport never made its anticipated $297,500 profit.[4]

*Discussion*

The gravamen of Newport's claim is that BHF–Bank was obliged to issue the tested telex necessary to render the Mannah LC operative, which in turn allegedly would have rendered the Punjab LC operative, which in

---

2.  The Mannah LC was advised, but not confirmed, to plaintiff by BHF–Bank.  (Cpt ¶ 10)

3.  The copy of the form of assignment attached to the complaint is stamped "received" by the bank on November 3, 1994.  (Cpt Ex. 5)  The Jacobs affidavit asserts that the form of assignment was executed in September and in the bank's hands by October 4, 1994.  (Jacobs Aff. ¶ 30–35)  In view of the disposition of this motion, nothing appears to turn on the correct date.

4.  Newport sought to draw on the Mannah LC, alleging that it had the right to do so because Mannah Corp. never shipped the sugar.  Midlantic, however, dishonored Newport's draft because the Mannah LC had never become operative in view of Midlantic's failure ever to receive the tested telex from BHF–Bank.  (Cpt ¶¶ 16–19 & Ex. 6)

turn would have led Mannah Corp. to ship the sugar to Oswal and permitted Newport to draw on the Punjab LC to the extent of the $297,500 spread between the price to Mannah (previously assigned by Newport to Mannah) and the price to Oswal. The theory of the case, however, is far from clear. The complaint speaks in conclusory terms of negligence and "breach of contract & rules." The opposing affidavit asserts that (1) BHF–Bank was "obliged to facilitate the occurrence of the transaction" because it "confirmed the 'Punjab' credit" (Jacobs Aff. ¶ 51); (2) it was estopped to decline to send the tested telex (*id.* ¶ 52 n. 20), and (3) Newport is entitled to recover as a third-party beneficiary of a contract to which BHF–Bank was a party (*id.* ¶¶ 53–54 & n. 21).

*The Duty of a Confirming Bank*

The Punjab and Mannah LCs each state that they are governed by the Uniform Customs and Practice for Documentary Credits (1993 Revision), ICC Publication No. 500, commonly referred to as the "UCP." (Cpt Exs. 1, 3) Where, as here, a letter of credit is expressly made subject to the UCP, the UCP governs rather than Article 5 of New York's Uniform Commercial Code. *First Commercial Bank v. Gotham Originals, Inc.,* 64 N.Y.2d 287, 295 n. 4, 486 N.Y.S.2d 715, 719 n. 4, 475 N.E.2d 1255, 1259 n. 4 (1985).

Under the UCP, as under the Commercial Code, letters of credit are entirely separate and independent from any obligations of the bank's customer to the beneficiary or that the issuing bank may have to its customer. *Id.,* 64 N.Y.2d at 294, 486 N.Y.S.2d at 719, 475 N.E.2d at 1259. Article 3(a) of the UCP provides in relevant part:

"Credits, by their nature, are separate transactions from the sales or other contract(s) on which they may be based and banks are in no way concerned with or bound by such contract(s), even if any reference whatsoever to such contract(s) is included in the Credit."

Accordingly, Article 4 provides:

"In Credit operations all parties concerned deal with documents, and not with goods, services and/or other performances to which the documents may relate."

Thus, BHF–Bank was concerned solely with the documents presented to it, and its obligations as a confirming bank on the Punjab LC and as an advising bank on the Mannah LC were defined strictly by the provisions of the UCP and principles of New York law.

Article 9 of the UCP provides in substance that the sole obligation of a confirming bank is to pay the letter of credit in accordance with its terms. In consequence, BHF–Bank's sole obligation as confirming bank on the Punjab LC was to honor Newport's draft thereon *if* (1) Newport made the letter of credit operative by establishing a performance bond or standby letter of credit in the amount of $50,000 in favor of Oswal, as required by the terms of the LC, and (2) presented the required shipping documents concerning the delivery of the sugar as required. It had no obligation whatever to "facilitate the occurrence of the [underlying] transaction," as plaintiff contends. And since Newport acknowledges that the Punjab LC never became operative and that the required documents never were presented, BHF–Bank cannot be held liable for breach of any duty as confirming bank on the Punjab LC.

*Estoppel*

Newport asserts that BHF–Bank was estopped to refuse to send the tested telex because it (1) "notified the plaintiff via facsimile ... on or about October 7, 1994 that the Punjab Bank had made 'operative' that part of the 'Punjab' credit which obligated Oswal" to pay the charges for assignment of the LC, and (2) furnished Newport with the form which Newport used to assign proceeds of the Punjab LC to Mannah. (Jacobs Aff. ¶ 51 n. 20)

To be sure, if BHF–Bank had induced Newport to believe that it would issue the tested telex and Newport had relied upon that assurance to its detriment, BHF–Bank might well have been estopped to refuse. *See, e.g., Rose v. Spa Realty Associates,* 42 N.Y.2d 338, 343–44, 397 N.Y.S.2d 922, 927, 366 N.E.2d 1279, 1283 (1977); *Carrera v. Bank of New York,* 153 A.D.2d 918, 920, 545

N.Y.S.2d 726, 728 (2d Dept.1989); *Cliffs Management Corp. v. Great Eastern Management Corp.*, 85 A.D.2d 584, 585, 445 N.Y.S.2d 460, 462 (1st Dept.1981), *appeal dismissed,* 56 N.Y.2d 643, 450 N.Y.S.2d 787, 436 N.E.2d 194 (1982). But plaintiff's allegations make out no such case here.

Assuming *arguendo* the accuracy of plaintiff's claim that BHF–Bank declined to send the telex for want of assurance that its fee would be paid, the amendment of the Punjab LC afforded BHF–Bank no assurance of payment that the bank was bound to accept. The amendment provided that "charges for ... assignment of the LC are now to the account of" Oswal and it emphasized that "LC remains inoperative." (Jacobs Aff. Ex. 7) The amendment therefore provided BHF–Bank neither with assurance that Oswal in fact would pay its fee nor with any mechanism by which it might itself draw on the Punjab LC, assuming it became operative, to pay itself the fee. BHF–Bank had no obligation to Newport to take the credit risk inherent in trusting Oswal to pay it for sending the tested telex. As plaintiff does not suggest that BHF–Bank led it to believe at any point that it would issue the telex absent payment of its fee, there is no basis for an estoppel. Plaintiff would have been well advised to pay the Bank's $7,881.25 fee (Jacobs Aff. ¶ 33 n. 14) and to look to Oswal itself.

*Third Party Beneficiary*

Finally, Newport claims that it is entitled to recover as third party beneficiary of the contract between Midlantic Bank and Mannah Corp., the Mannah LC. (Jacobs Aff. ¶ 53 n. 21) In the same sentence, it maintains that it is entitled to recover for the bank's alleged failure to honor its obligations "attendant with the 'Punjab' letter of credit ..." (*id.*), thus perhaps implying that it may recover as a third party beneficiary of the Punjab LC. Whichever the theory, it is without merit.

In order to recover as a third party beneficiary of a contract, the putative beneficiary must establish, among other things, a breach of the contract upon which it relies. Here, BHF–Bank entered into only two contracts, one as confirming bank of the Punjab LC and the other as advising bank of the Man-

nah LC. There is no suggestion that it breached any contractual obligation it owed by virtue of either relationship. *See also* UCP Art. 3(b) ("A Beneficiary can in no case avail himself of the contractual relationship existing between the banks or between the Applicant and the Issuing Bank.") Accordingly, this claim is insufficient.

### Conclusion

For the foregoing reasons, plaintiff's request for leave to amend the complaint is granted and the complaint is deemed amended to contain the allegations set forth in plaintiff's papers in opposition to defendant's motion to dismiss. The motion to dismiss is deemed applicable to the complaint as thus amended and is granted in all respects. The case is dismissed.

SO ORDERED.