[653 NYS2d 1010]

HERBERT MENNEN et al., Appellants-Respondents, v J. P. MORGAN & Co. INCORPORATED, Respondent, and MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Respondent-Appellant.

Fourth Department, February 7, 1997

## APPEARANCES OF COUNSEL

*Kavinoky & Cook, L. L. P.,* Buffalo *(Marilyn A. Hochfield* and *Lauren D. Rachlin* of counsel), for appellants-respondents.

*Levi & Lubarsky,* New York City *(Howard B. Levi* of counsel), and *Hiscock & Barclay, L. L. P.,* Buffalo, for respondent and respondent-appellant. (One brief filed.)

## OPINION OF THE COURT

PINE, J. P.

Plaintiffs appeal from a judgment of Supreme Court, Erie County, that granted summary judgment to Morgan Guaranty Trust Company of New York (Morgan Guaranty) on five counterclaims to recoup overpayments on standby letters of credit of which plaintiffs were the beneficiaries. Morgan Guaranty cross-appeals to the extent that the court granted plaintiffs' cross motion for summary judgment dismissing the bank's sixth counterclaim, which alleged fraud. The court determined that the payments made, which were the maximum amounts available under each letter of credit, exceeded the amounts due on the promissory notes secured by the letters of credit. That determination was erroneous because it violates the principle that a letter of credit is independent of other contracts associated with it.

This case arises from a stock buy-out of Mennen Medical Inc. (Mennen Medical), of which plaintiffs were shareholders. They sold their stock to a group of investors that included an entity named Odyssey Partners, L. P. (Odyssey). Mennen Medical gave each plaintiff a five-year note, identical except for the name of the holder and the amounts due. The notes called for five equal payments of principal annually, commencing September 4, 1992. Interest was to be paid monthly for the first year and annually thereafter on the anniversary date, at the prime rate announced by Morgan Guaranty.

The notes were secured by standby letters of credit issued by Morgan Guaranty. The letters of credit provided for payment within 10 days after presentation of a draft accompanied by a notarized statement that the draw represents an unpaid

installment or that the outstanding balance is due under the note "as such Note is in default as specified under paragraph 4 of such Note." Each letter of credit included a schedule listing a diminishing maximum amount available over the five-year life of the note.

The letters of credit also stated that they set forth the full understanding between Morgan Guaranty and each plaintiff and that the letters of credit "shall not in any way be modified, amplified or amended by reference to any document, instrument, agreement or note referred to herein and any such reference shall not be deemed to be incorporated herein by reference to any such document, instrument, agreement or note."

In addition, the letters of credit provided that they are subject to the Uniform Customs and Practice for Commercial Documentary Credits ([1983 Revision] International Chamber of Commerce Publication No. 400).

The first two installments due under the notes were paid by the obligor, Mennen Medical. By the time the third payment was due, Odyssey had apparently taken control of the group of investors who had purchased the stock of the corporation. When plaintiffs were advised that the obligor would not make the third payment, they accelerated the notes and drew the maximum payments to which each was entitled under the respective letters of credit.

Morgan Guaranty promptly paid those draws, but thereafter concluded that the amounts paid exceeded the amounts due pursuant to the underlying promissory notes and sought reimbursement of what it regarded as overpayment from plaintiffs.

Plaintiffs brought this action seeking a declaration that the draws were correct and that they had no obligation to repay any amounts to Morgan Guaranty. Morgan Guaranty's answer included six counterclaims. It moved for summary judgment on its counterclaims, and plaintiffs cross-moved for summary judgment declaring their entitlement to the amounts drawn and dismissing the counterclaims. The court dismissed the fraud counterclaim but granted summary judgment to Morgan Guaranty on the remaining counterclaims, for money had and received, payment by mistake, unjust enrichment, breach of contract and negligent misrepresentation, based on its determination that the amounts due pursuant to the underlying promissory notes were less than the amounts drawn on the letters of credit.

Plaintiff Herbert Mennen attempted to explain the reason for the difference between the amounts due on the promissory

notes and the maximum amounts in the letters of credit. The attempted explanation is irrelevant. The only relationship between Morgan Guaranty and each plaintiff was the letter of credit, an instrument separate and distinct from either of the two underlying contracts. One underlying contract is the agreement between the bank and its customer that the customer will reimburse Morgan Guaranty if the standby credits are drawn. That contract is not in the record but the customer is apparently one or more of the investors who purchased the stock in Mennen Medical. The other contract is the note itself between Mennen Medical, the obligor, and each plaintiff. The relationship among those three undertakings in the context of a commercial letter of credit used to finance a sale of goods is delineated in *First Commercial Bank v Gotham Originals* (64 NY2d 287, 294). While this case involves a standby letter of credit, where a demand for payment indicates that something has gone wrong in the underlying transaction, and *Gotham* is a commercial case, where the issuer expects to pay if the underlying transaction is completed, the independence principle discussed in *Gotham* applies equally here. The independence principle requires that the parties to a letter of credit deal in documents only, not the underlying facts. "[T]he issuer's obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. It is not required to resolve disputes or questions of fact concerning the underlying transaction" (*First Commercial Bank v Gotham Originals, supra*, at 295). Indeed, Morgan Guaranty honored the draws, which were in proper form.

The three-part structure of the letter of credit transaction contemplates that, after the issuer pays a draft conforming to the requirements in the letter of credit, the issuer may demand reimbursement from its customer based on their agreement. If the customer believes that the beneficiary of the letter of credit was not entitled to the funds it received, the customer may assert a claim against the beneficiary under its contract with the beneficiary.

That process has been short-circuited in this case. Morgan Guaranty is not entitled to reimbursement from its customer because, some eight months before the third payment on the notes was due, Morgan Guaranty entered into a final settlement agreement with Odyssey, its customer. That agreement recited that it was based on the fact that both parties anticipated that the maker of the notes (Mennen Medical) would be unable to pay them when they became due and that

the beneficiaries of the standby letters of credit would draw upon them. By the terms of the final settlement agreement, payment under it terminated and discharged the obligation of the customer under the reimbursement agreement. The fact that Morgan Guaranty terminated its contract with its customer does not give any new or additional rights to Morgan Guaranty against the beneficiaries of the independent letters of credit. All parties chose to allocate risks when they entered into the letter of credit arrangement, and the courts should not reallocate those risks (*see,* Dolan, Law of Letters of Credit: Commercial and Standby Credits ¶ 1.05 [1], at 1-19—1-20 [1996 rev ed]).

Any argument that such rights could arise from the warranty provisions of UCC 5-111 (1) is foreclosed under New York law because the letters of credit are explicitly stated to be subject to the Uniform Customs and Practice for Commercial Documentary Credits ([1983 Revision] International Chamber of Commerce Publication No. 400). UCC 5-102 (4), as adopted in New York, provides in relevant part that UCC article 5 does not apply to a letter of credit if by its terms such letter of credit "is subject in whole or in part to the Uniform Customs and Practice for Commercial Documentary Credits fixed by the Thirteenth or by any subsequent Congress of the International Chamber of Commerce." That restrictive rule, which has been adopted only in New York, Alabama, Missouri and Arizona, has been characterized by one commentator as "unfortunate" (Dolan, Law of Letters of Credit: Commercial and Standby Credits, *op. cit.,* ¶ 4.05, at 4-21), but it precludes application of UCC 5-111 in this case. The only exception recognized under New York law is UCC 5-114, which codifies precode case law in New York (*see, First Commercial Bank v Gotham Originals, supra,* at 295, n 4, citing *United Bank v Cambridge Sporting Goods Corp.,* 41 NY2d 254, 258, n 2).

Accordingly, the judgment should be modified by denying Morgan Guaranty's motion and granting the cross motion of plaintiffs for summary judgment, dismissing the remaining counterclaims against them and granting judgment in favor of plaintiffs declaring that Morgan Guaranty has no claim against plaintiffs concerning their draws upon their letters of credit.

LAWTON, CALLAHAN, DOERR and BOEHM, JJ., concur.

Judgment unanimously modified, on the law, as modified, affirmed, with costs to plaintiffs, and judgment granted in accordance with the opinion by PINE, J. P.