OPINION OF THE COURT
Bellacosa, J.
This financial dispute occurs as the aftermath of payments made in precise compliance with letters of credit. Morgan Guaranty Trust Co., the defendant issuing bank, seeks to recover for alleged overpayments to the plaintiffs who are the beneficiaries of the subject letters of credit. Morgan had honored the drafts from the beneficiaries holding the irrevocable standby letters of credit, upon their presentation of conforming documentation. Months later, Morgan alleged some falsity in that respect.
*17 Plaintiffs commenced this action seeking a declaration (1) that their beneficial draws on the subject letters of credit were correct in amount, and (2) that defendant Morgan may not assert claims against plaintiffs by reaching beyond the letters of credit themselves.
Supreme Court granted part of defendant Morgan’s motion for summary judgment as to its counterclaims. The Appellate Division modified by denying Morgan’s motion; instead, it granted plaintiffs’ cross motion for summary judgment, dismissed Morgan’s first five counterclaims and declared that Morgan has no claim against plaintiffs concerning the draws upon the letters of credit. This Court granted defendant Morgan leave to appeal. We affirm for reasons different from those expressed by the Appellate Division.
L
This case arises from a 1991 stock buy-out of Mennen Medical, Inc., in which plaintiffs were major shareholders. Plaintiffs sold their shares to a group of investors including an entity named Odyssey Partners, L.P. To finance the transaction, Mennen executed and delivered a five-year promissory note to each plaintiff. The notes were identical except for the names of the shareholders and the amount of the note. Each note called for five equal annual payments of principal commencing September 1991, with monthly interest payments the first year, followed by annual interest payments on subsequent anniversary dates. The notes also contained an acceleration clause to cover defaults.
To secure the notes for payment to bought-out shareholders, Mennen obtained standby irrevocable letters of credit from defendant Morgan Guaranty Trust Company. Each letter of credit is identical in form except for the named beneficiary and face amounts. The letters of credit provide for payment within 10 days after presentation of a draft accompanied by a notarized statement that the draw represents an unpaid note installment or that the outstanding balance is due as a consequence of default. The letters of credit also include a standard merger clause to the effect that they reflect the full contractual undertaking and that "such undertaking shall not in any way be modified, amplified or amended by reference to any document, instrument, agreement or note referred to herein and any such reference shall not be deemed to be incorporated herein by reference to any such document, instrument, agreement or note.” The letters of credit also expressly provide that *18 they are subject to the Uniform Customs and Practice for Documentary Credits (UCP).
Mennen Medical, the obligor, timely paid the first two installments due under the promissory notes. Eventually, Odyssey took financial control of the group of investors who had purchased the Mennen stock. Prior to the third due payment, Odyssey defaulted on its obligations, and plaintiffs accelerated the notes and drew upon the maximum payment provided under the letters of credit.
Morgan promptly paid the respective draws to the beneficiaries of the letters of credit. Several months later, however, Morgan concluded that the amounts it had paid exceeded the amounts due under the promissory notes themselves. Morgan demanded reimbursement from plaintiffs for the alleged overpayments totaling approximately $230,000. Morgan alleged misstatements of the amounts declared to have been owing in the notarized draw statements. The beneficiaries retorted that the "overpayments” represented a premium above the face amounts of the notes, orally negotiated at the time of the purchase. They added that the premiums were designed to compensate them for increased tax liabilities upon acceleration and for the loss of future interest.
Notably, Morgan had contractually relinquished the right to seek reimbursement from its customer Odyssey through a defeasance agreement between those two parties. Under the defeasance device, Morgan, in exchange for an up-front, lump-sum payment, released Odyssey from any subsequent obligation to reimburse Morgan for any amounts Morgan paid to the beneficiaries pursuant to the letters of credit.
The beneficiaries preemptively sued for a declaration that their draws under the letters of credit were correct in amount and that Morgan enjoyed no separate rights over against them. Morgan counterclaimed for alleged overpayments under theories of money had and received, breach of contract, payment by mistake, unjust enrichment, negligent misrepresentation, and fraud. It moved for summary judgment and plaintiffs cross-moved for similar relief and for dismissal of the counterclaims.
Supreme Court dismissed Morgan’s fraud counterclaim, but granted it summary judgment on the other counterclaims. The court determined that the letters of credit payments exceeded the amounts due on the underlying promissory notes secured by the letters of credit. With regard to Morgan’s fraud counterclaim, however, the court reasoned that dismissal was *19 necessitated by the fact that Morgan had not submitted any admissible evidentiary proof evoking a disputed issue of material fact which would require a trial on the issue of fraud. On the contrary, the court determined that plaintiffs had established a legal basis for their entitlement to the later-disputed premium amounts.
The Appellate Division modified, holding that Morgan has no claim against plaintiffs concerning their draws upon their letters of credit (229 AD2d 237). It gave full relief to plaintiffs and none to defendant. The Court reasoned that Supreme Court’s in-part favorable ruling for Morgan "violates the principle that a letter of credit is independent of other contracts associated with it” (id., at 238). The Court stated that "[t]he only relationship between Morgan Guaranty and each plaintiff was the letter of credit, an instrument separate and distinct from either of the two underlying contracts” (id., at 240). Additionally, the Court declared that "[t]he fact that Morgan Guaranty terminated its contract with its customer [Odyssey] does not give any new or additional rights to Morgan Guaranty against the beneficiaries of the independent letters of credit. All parties chose to allocate risks when they entered into the letter of credit arrangement, and the courts should not reallocate those risks” (id., at 241).
On this appeal, appellant Morgan argues that it should be entitled to recover overpayments made to plaintiffs on the UCP-governed letters of credit pursuant to pre-Uniform Commercial Code common law, notwithstanding that plaintiffs’ allegedly false documentation facially complied with the terms of the instrument. Morgan contends that it did not learn until after making payments that the documents fraudulently (as it perceives and alleges the circumstance) specified the amounts owing and, as such, it should be permitted to assert a claim against the payee beneficiaries subsequent to satisfaction pursuant to the letters of credit.
IL
"The purpose of a letter of credit is to substitute for, and therefore support, an engagement to pay money” (First Commercial Bank v Gotham Originals, 64 NY2d 287, 294; see, Dolan, Letters of Credit: Commercial and Standby Credits ¶ 2.02, at 2-4 [2d ed]). "By issuing a letter of credit, the issuer undertakes an obligation to pay the beneficiary * * * from the account of its customer” (First Commercial Bank v Gotham Originals, supra, 64 NY2d, at 294).
*20 Letters of credit typically involve three separate contractual relationships and undertakings: the underlying contract between the customer and the beneficiary; the agreement between the bank and its customer, by which the letter of credit is issued in exchange for the customer’s promise to reimburse the bank; and, the letter of credit itself, which represents the financial institution’s commitment to honor drafts presented by the intended beneficiary upon compliance with the terms and conditions specified in the instrument (First Commercial Bank v Gotham Originals, supra, 64 NY2d, at 294 [citing United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258-259]; see, All Serv. Exportacao, Importacao Comercio v Banco Bamerindus, 921 F2d 32, 34).
"[A] fundamental principle governing these transactions is the doctrine of independent contracts,” which "provides that the issuing bank’s obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the * * * contract and separate as well from any obligation of the issuer to its customer under their agreement” (First Commercial Bank v Gotham Originals, supra, 64 NY2d, at 294 [citing UCC 5-114 (1)]). "Stated another way, this principle stands for 'the fundamental proposition * * * that all parties [to a letter of credit transaction] deal in documents rather than with the facts the documents purport to reflect’ ” (id., at 294 [citations omitted] [emphasis added]). Therefore, "the issuer’s obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. It is not required to resolve disputes or questions of fact concerning the underlying transaction” (id., at 295).
The twist presented by this case requires the Court to determine first whether an issuer has violated this principle when it promptly pays a draw and only subsequently challenges the validity of the documentation on fraud grounds. A leading authority on the letters of credit type negotiable instruments has stated that "[i]n the event the documents comply on their face with the terms of the credit, the issuer should have a cause of action against the beneficiary if the issuer honors the conforming demand and then learns that, for some reason, the documents do not comply” (Dolan, Letters of Credit: Commercial and Standby Credits ¶ 9.04, at 9-48 [2d ed]). Therefore, the issuer’s initial, timely payment sufficiently satisfies the independence principle and, "[a]fter payment * * * the independence principle should not bar the issuer’s claim against a beneficiary” {id., at 9-48).
*21 This is so because the independence doctrine realistically reflects "[t]he exigencies of credit law,” which necessitate that the issuer honor presentations that comply on their face without looking beneath the documents (Dolan, op. cit, at 9-48). "Any other rule would frustrate the credit’s promptness feature, which is indispensable to the credit’s success as a commercial device” (id., at 9-48). "Letters of credit provide a quick, economic and trustworthy means of financing transactions for parties not willing to deal on open accounts by permitting the seller to rely on the credit of the issuing bank, as well as that of the buyer” (All Serv. Exportacao, Importacao Comercio v Banco Bamerindus, 921 F2d 32, 36, supra). The underlying purpose of the rule, however, should not "permit a beneficiary to say, after payment, that [its] false, fraudulent, or inaccurate documents satisfied the conditions of the credit” (Dolan, Letters of Credit: Commercial and Standby Credits ¶ 9.04, at 9-48 [2d ed]).
The above precedents and authorities persuade us that Morgan, by timely paying the letters of credit upon presentation, did not violate the independence principle. The underlying purpose of the doctrine to insure that promptness of payment was and is fulfilled by requiring the issuer to pay up front, even though it would also recognize the issuer subsequently pursuing recovery against a beneficiary based on alleged fraud.
We, thus, conclude that the Appellate Division’s holding that the independence principle was violated by Morgan in the instant case is not well founded. That feature of the analysis, however, does not prevent us from arriving at the same bottom line result as the Appellate Division. We turn, then, to the next and dispositive aspects of the case.
¡IL
From the Uniform Commercial Code, we note a "limited exception” to the independence principle (First Commercial Bank v Gotham Originals, supra, 64 NY2d, at 295; see, UCC 5-114). Under the general rule, an issuer must honor a draft which complies with the terms of the relevant letter of credit, regardless of whether the documents conform to the underlying contract between the customer and the beneficiary (UCC 5-114 [1]). When a required document, however, does not conform to the necessary warranties, is forged or fraudulent, or there is fraud in the transaction, an issuer may properly refuse to honor a draft drawn under a letter of credit even though *22 the documents presented appear on their face to comply with the terms of the letter of credit (UCC 5-114 [2] [b]; see, First Commercial Bank v Gotham Originals, supra, 64 NY2d, at 295).
Furthermore, the Uniform Commercial Code allows an issuing bank a remedy against a beneficiary for breach of warranty (see, UCC 5-111 [1]). It states that "the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with” (UCC 5-111 [1]; see, Mellon Bank v General Elec. Credit Corp., 724 F Supp 360 [applying UCC 5-111]). Notably, the section does not suggest that "breach of the underlying agreement constitutes a breach of the Section 5-111 warranty” (Dolan, Letters of Credit: Commercial and Standby Credits ¶ 9.04, at 9-49 [2d ed]). Rather, "[t]hat warranty relates to the conditions of the credit, not to the conditions of the underlying agreement” (id., at 9-49).
A key, distinguishing feature of the instant transaction and controversy is that the letters of credit are expressly made subject to the Uniform Customs and Practice for Documentary Credits {see, UCC 5-102 [4] [noting that UCC article 5 does not apply to a letter of credit when by its terms or agreement the letter of credit is subject in whole or in part to the UCP]). Unlike the Uniform Commercial Code, the UCP is silent with respect to a letter-of-credit remedy for the issuer against the beneficiary under circumstances where the issuer accepts the documents and only later discovers that they may be false or inaccurate, based on variations with underlying documents.
This Court has noted that "even if the [UCP] were deemed applicable * * *, it would not, in the absence of a conflict, abrogate the precode case law (now codified in [UCC] 5-114) and that authority continues to govern even where article 5 is not controlling” (United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 258, n 2, supra). We reasoned that the relevant UCP provisions are not in conflict and, more generally, do not affect the subject matter of section 5-114 (id.). Our conclusion was expressed in this way: "the [UCP], where applicable, does not bar the relief provided for in section 5-114 of the code” (id., at 258, n 2; see, 3 White and Summers, Uniform Commercial Code § 26-3, at 123-124 [Practitioner’s 4th ed] [noting that pre-Code case law applies as long as it does not conflict with the UCP and that "New York courts will turn to (UCC) Article 5 to the extent the UCP and pre-Code case law are silent”]).
*23 We are satisfied, therefore, that pre-Code case law (codified in UCC 5-114) must be considered in resolving the instant litigation. Morgan’s various counterclaims, however, were properly dismissed because direct recourse is effectively blocked under the merger clause, which was part and parcel of the letters of credit in this case. Indeed, Morgan’s rights in this instance and on this record should not be deemed and allowed to be greater than those fixed by the four corners of the letters of credit. Its counterclaims inescapably flow from and implicate the separate, underlying contract between plaintiffs as sellers and the Mennen group of buyers. To give legal cognizance and effect to Morgan’s counterclaims in this commercial transaction, thus, would pierce the protective shield of the particular clauses and financial instruments arranged by and among these sophisticated parties.
Lastly, an issuing bank may have redress for fraud against a beneficiary if its claim is predicated on sustainable fraud allegations and admissible evidence (see, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, 259, supra). Although the fraud theory could obviate the otherwise prohibitive express language of letters of credit, these nuanced features do not support Morgan’s legal position as applied in this case and on this record. The trial court correctly determined that there are no sustainable or cognizable issues of fact as to fraud. That was impliedly adopted by the Appellate Division. The fraud exception theory of recourse against beneficiaries of letters of credit, thus, provides no outlet for Morgan.
Accordingly, the order of the Appellate Division should be affirmed, with costs.