**CREACIONES CON IDEA, S.A. de C.V.; and Imagen Textil y Confecciones, S.A. de C.V., Plaintiffs,**

v.

**MASHREQBANK PSC and MashreqBank·New York (formerly Bank of Oman Ltd.), Defendants.**

No. 97 Civ. 9573(CBM).

United States District Court,
S.D. New York.

May 12, 1999.

Bruce Langer, New York City, for plaintiffs.

Sabharwal & Associates, by Rohit Sabharwal, Niket Rele, New York City, for defendants.

*OPINION ON MOTION TO DISMISS*

MOTLEY, District Judge.

Each of the plaintiffs, Creaciones Con Idea, S.A. de C.V. (hereinafter, "Creaciones") and Imagen Textil y Confecciones, S.A. de C.V. (hereinafter, "Imagen"), was a beneficiary of an irrevocable letter of credit (hereinafter, "ILC") issued by defendant MashreqBank.[1] Under those ILCs, plaintiffs made payment demands that defendant rejected, asserting that plaintiffs provided inadequate documentation for those

demands. Plaintiffs allege that defendant wrongfully refused the demands, in breach of the ILCs and with fraudulent intent. Defendant has moved to dismiss under Fed.R.Civ.P. 12(b)(6). The motion is granted in part and denied in part. Because the allegations are insufficient for a fraud or conspiracy claim, the motion is granted as against counts IV and V of the complaint. The motion is denied as to all other counts because of uncertainty as to whether defendant properly documented its refusals of plaintiffs' payment demands.

## I. BACKGROUND

### A. The Letters of Credit

At issue in this case are two ILCs issued by defendant MashreqBank upon the application of corporations that purchased clothing produced by plaintiffs. In a typical transaction covered by one of the ILCs, the purchaser would place an order from one of the plaintiff producers; the producer would ship the clothing to the purchaser and would submit (here, through another bank) to MashreqBank whatever documentation of the shipment the ILC required; and MashreqBank would pay the producer from the balance of the purchaser's credit under the ILC.

On Irrevocable Letter of Credit No. 76943–95 (hereinafter, "ILC # 1"), opened on December 18, 1995, the applicant was Pacific Coast Mills, Inc. (hereinafter, "Pacific") and the beneficiary (after a valid transfer) was plaintiff Creaciones. *See* Shaikh Aff. ¶ 6; *id.*, Ex. A. On Irrevocable Letter of Credit No. 13943 (hereinafter,

---

1. The complaint names two defendants: MashreqBank PSC and MashreqBank New York (formerly Bank of Oman Ltd.). Abdul Alim Shaikh, the bank manager whose affidavit supports the motion to dismiss, states that he is employed by "MashreqBank, psc, ... [which] maintains a branch office in New York.... There is no legal entity called MashreqBank New York. MashreqBank New York is merely a branch of MashreqBank, psc and therefore MashreqBank, psc and MashreqBank New York are one and the same legal entity.... [B]y way of caution I am making this present affidavit on behalf of both MashreqBank, psc and MashreqBank New York (collectively the "Bank" or "Defendants")." Shaikh Aff. ¶ 2. Analysis of this motion would be the same for either named defendant because plaintiffs draw no distinction between the actions of either. For simplicity, in this opinion the Court will refer to defendants MashreqBank PSC and MashreqBank New York, collectively and interchangeably, as "defendant" or "MashreqBank."

"ILC # 2"), opened on July 17, 1996, the applicant was Platinum Sportswear, Ltd. (hereinafter, "Platinum") and the beneficiary was plaintiff Imagen. *See id.* ¶ 7; *id.*, Ex. E. Both ILCs state that they are governed by the Uniform Customs and Practice for Documentary Credits (1993 revision), I.C.C. Pub. No. 500 (hereinafter, "UCP"), *see* Def.'s Mem., Ex. 1. Banco Nacional De Mexico S.A. (hereinafter, "Banamex") served as the negotiating bank, functioning as a go-between that submitted plaintiffs' payment demands to defendant after plaintiffs made shipments. *See* Shaikh Aff. ¶ 3.

### B. The Refused Demands for Payment

In August 1996 and September 1996, plaintiff Creaciones presented documentation for payment demands of $68,611.20 under ILC # 1.[2] *See* Compl. ¶ 15. In September 1996, plaintiff Imagen presented documentation for payments of $122,823.95 under ILC # 2. *See id.* ¶ 24. Defendant received three letters from Banamex demanding these payments, one for plaintiff Creaciones and two for plaintiff Banamex, each letter attached to the plaintiff's documentation. *See* Shaikh Aff., Ex. B (for Creaciones; hereinafter, "demand letter # 1"), Ex. G (for Imagen;

hereinafter, "demand letter # 2"), Ex. J (for Imagen; hereinafter, "demand letter # 3").

Each Banamex demand letter noted multiple "discrepancies" between the plaintiff's documentation and the ILC's document requirements. Demand letter # 1 listed two specific omissions from bill of lading and unspecified "more discrepancies." Shaikh Aff., Ex. B; *see also* Tr. at 27. Demand letter # 2 listed three discrepancies: the NAFTA certificate was not an original but a copy; "shipment advice" was sent late; and the late shipment did not show notification to the purchaser. Shaikh Aff., Ex. G; *see also* Tr. at 27–28. Demand letter # 3 listed five discrepancies: failure to present the required sight draft; several omissions from the bill of lading; failure to specify the origin of the products in Mexico; omission of a signature from the packing list; and a discrepancy in the garment's certificate.[3] Shaikh Aff., Ex. J; *see also* Tr. at 28–29.

Defendant rejected each of the three demands in telexes stating that it had received "discrepant docs," had "informed the applicant accordingly," and was "holding the docs. entirely at y[ou]r disposal and risk.... If we do not receive any response from the applicant within 7 days

**2.** As to the payment demand under ILC # 1, the Court accepts the $68,611.20 figure for purposes of evaluating this motion to dismiss because it appears in the complaint and could be supported by competent evidence at a later stage. At this point, however, plaintiffs' documentary evidence for that transaction is a document written in Spanish that appears to state a figure of $39,561.30. *See* Compl., Ex. C. Plaintiffs also have failed to translate from Spanish the description in the complaint of what documentation ILC # 1 requires, *see* Compl. ¶ 14, which might limit what the Court could find from the face of the complaint. Defendant counters plaintiffs' $68,-611.20 figure with a figure of $47,379.00, *see* Shaikh Aff. ¶ 6(h), in a MashreqBank manager's affidavit that includes not only factual assertions, but also, and even primarily, legal arguments by the non-lawyer manager as to what "counsel inform me that ... New York courts ... require," *id.* These shortcomings in both sides' submissions do not affect the

outcome of this motion and presumably will be remedied, as this litigation progresses, with proper submissions that are in the Court's native language of English and that do not present legal arguments from non-lawyers.

**3.** Demand letter # 3 described this last discrepancy as follows: "GARMENT'S CERT. UNQUOTE THE DOCUMENTS HAVE BEEN FAXED." Shaikh Aff., Ex. J. Defense counsel could not clarify what this last discrepancy was: "I'm not sure what that means, but that was one of the discrepancies noted." Tr. Nov. 18, 1998 (hereinafter, "Tr.") at 29. The Court's description of the exact nature of this and other discrepancies may be imperfect because the payment demand letters are typed in a shorthand that, at best, is not entirely clear to those outside the industry. While the exact nature of each discrepancy may prove significant during this litigation, it does not affect the outcome of this motion to dismiss.

from today, we shall return the docs. to you with our complete discharge." *See* Shaikh Aff., Ex. C, H, K (same quoted language regarding demand letters # 1, # 2, and # 3, respectively).

## C. Plaintiffs' Complaint

On December 31, 1997, plaintiffs brought this action alleging that defendant's refusals of the payment demands amounted to breach of contract, fraud, and (only by MashreqBank and Platinum against Imagen under ILC # 2) conspiracy to commit this misconduct. The case arises under diversity jurisdiction because plaintiffs are foreign corporations organized under Mexican law and defendant is a registered commercial bank established under United Arab Emirates law. New York law applies because the transactions occurred in defendant's New York office.

In their complaint, plaintiffs claim that the discrepancies regarded mere "collateral matters" and therefore did not relieve defendant of its obligation to make the payments. *See* Pls.' Mem. at 16–18. Even if such discrepancies might relieve a bank of its obligation to pay a letter of credit beneficiary, plaintiffs argue, defendant is not relieved for several reasons here: defendant's refusal did not accord with governing UCP procedures for refusals based on document discrepancies, *see id.* at 3–9; plaintiffs' completed deliveries of the goods rendered any document discrepancies moot, *see id.* at 9–12; and defendant's practice of not objecting to such discrepancies precludes it from objecting here under principles of waiver and estoppel, *see id.* at 13–15. On February 3, 1998, defendant filed the pre-answer motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), that is presently before the Court.

## II. ANALYSIS

### A. Standards for 12(b)(6) Motions to Dismiss

A court should grant a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Gant, et al. v. Wallingford Bd. of Educ., et al.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) (per curiam) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974))). The Court "is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient," *Goldman,* 754 F.2d at 1067, and therefore "must 'accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff.'" *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (quoting *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996)).

### B. UCP Article 14 Provisions Regarding Submissions of "Discrepant Documents"

Because both ILCs adopt UCP Article 14, which explicitly addresses the relevant issues, it is unnecessary to look to otherwise applicable Uniform Commercial Code (hereinafter, "UCC") provisions. *See Mennen, et al. v. J.P. Morgan & Co.,* 91 N.Y.2d 13, 22, 689 N.E.2d 869, 666 N.Y.S.2d 975 (1997) ("UCC article 5 does not apply to a letter of credit when by its terms or agreement the letter of credit is subject in whole or in part to the UCP" (citing UCC § 5–102[4] )); *Bouzo v. Citibank N.A.,* 96 F.3d 51, 57 n. 3 (2d Cir. 1996) (holding the same under New York

law). While adoption of the UCP " 'would not, in the absence of a conflict, abrogate the precode case law [ ]now codified in [UCC § ] 5–114,' " *Mennen,* 91 N.Y.2d at 22, 689 N.E.2d 869, 666 N.Y.S.2d 975 (quoting *United Bank v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 258 n. 2, 360 N.E.2d 943, 947, 392 N.Y.S.2d 265, 269 (1976)), here the direct applicability of UCP Article 14 renders any contrary UCC rule conflicting and therefore inapplicable.

### 1. Standard of Strict Compliance by Beneficiary

 UCP Article 14 addresses the issuing bank's and the beneficiary's rights when the beneficiary provides "discrepant documents" in a payment demand. Under Article 14, "the standard of strict compliance" applies to the beneficiary's duty to provide the documentation that the letter of credit requires, which means that "[e]ven slight discrepancies in compliance with the terms of a letter of credit justify refusal to pay." *Hellenic Republic v. Standard Chartered Bank,* 219 A.D.2d 498, 498, 631 N.Y.S.2d 320, 321 (1st Dept. 1995) (finding a "material discrepancy" the beneficiary's use of letterhead that, on facial examination, looked different than what the letter of credit prescribed). *See also Trifinery v. Banque Paribas,* 762 F.Supp. 1119, 1123 (S.D.N.Y.1991). The issuing bank is entitled to have a motion to dismiss granted if it properly refused a payment demand that was not in strict compliance. *See, e.g., Kostroma, Ltd. v. Standard Chartered Bank,* 237 A.D.2d 220, 220–221, 655 N.Y.S.2d 31, 31 (1st Dept.1997) (affirming grant of motion to dismiss on the basis of documentary evidence because, where beneficiary did not comply with documentation requirements in the letter of credit that were "not ambiguous, . . . the documents failed to conform to the conditions of the letter of credit as a matter of law"). There is only a very narrow exception to the standard of strict compliance for "variations in a document . . . so insignificant as not to relieve the issuing bank of its obligation to pay[,]

. . . includ[ing] a situation where a word in a document is unmistakably clear despite an obvious typographical error, or where the customer provides only five copies of identical documents instead of six." *Trifinery v. Banque Paribas,* 762 F.Supp. 1119, 1123 (S.D.N.Y.1991) (citing *Beyene v. Irving Trust Co.,* 762 F.2d 4, 6 (2d Cir.1985) (obvious typographical error); *Bank of Cochin, Ltd. v. Mfrs. Hanover Trust Co.,* 612 F.Supp. 1533, 1541 (S.D.N.Y.1985) (providing five, not six, copies), *aff'd on other grounds,* 808 F.2d 209 (2d Cir.1986)).

### 2. Standard for Notice of Refusal by Issuing Bank

 UCP § 14(d) establishes the procedure for an issuing bank to refuse a payment demand supported by discrepant documents. The issuing bank must give notice of the refusal decision within seven days. *See* UCP § 14(d)(i). "Such notice must state all discrepancies in respect of which the bank refuses the documents." UCP § 14(d)(ii). If the issuing bank fails to comply with this refusal procedure, then it "shall be precluded from claiming that the documents are not in compliance with the terms and conditions" of the letter of credit. UCP § 14(e). Unsettled factual issues regarding whether a defendant bank's notice of refusal complied with UCP § 14(d) preclude pre-trial dismissal, even where there clearly were material discrepancies in the plaintiff beneficiary's documentation. *See Hellenic Republic v. Standard Chartered Bank,* 219 A.D.2d 498, 499, 631 N.Y.S.2d 320, 321 (1st Dept.1995) (denying defendant summary judgment, despite plaintiffs material documentary discrepancies, because of factual issues regarding whether defendant's refusal gave UCP-required notice "without delay" within a "reasonable time"); *Trifinery v. Banque Paribas,* 762 F.Supp. 1119, 1123 (S.D.N.Y.1991) (denying defendant summary judgment because of "genuine issue of material fact with respect to the issue of whether [defendant] waived those alleged

defects" on which defendant's refusal was based).

### 3. Defendant's Compliance with UCP § 14(d)

All three payment demand letters admitted "discrepancies" from the requirements of the applicable ILC. On this motion, however, it is not necessary for the Court to decide whether any alleged discrepancies could have justified a proper refusal of the payment demands, because defendant's refusals may not have been proper. Defendant's telexes responding to the demand letters did not specify, as UCP § 14(d) requires for notices of refusal, which discrepancies formed the basis for the decisions to refuse. Defendant argues that because the demand letters listed various discrepancies, it was unnecessary for defendant to reiterate those same discrepancies.

■■■ Defendant's reference to the demand letters' admissions of discrepancies is insufficient to comply with the UCP § 14(d) rule that a refusal must state what discrepancies were the basis for the refusal. It is not clear that every discrepancy the demand letters mentioned was a basis for defendant's refusal. "An issuing bank may waive the requirement of strict compliance" and honor payment demands in spite of clear documentary discrepancies. *Trifinery v. Banque Paribas*, 762 F.Supp. 1119, 1123 (S.D.N.Y.1991); *see also* UCP §§ 14(c), (e). Absent specification of which among several discrepancies motivated a bank to refuse a payment demand, a refusal of a multiply-discrepant submission does not provide notice of which discrepancies must be corrected for the bank to accept the demand.

Several considerations in this case amplify the need for the specificity that UCP § 14(d) requires regarding the exact grounds for refusal. Defense counsel admitted that some of the discrepancies were "minor," Tr. at 27, and plaintiffs allege that defendant's practice was to be lenient with similar discrepancies, *see* Flores Aff.

¶¶ 10 (under ILC #1), 12(i) (under ILC #2); Tr. at 20–21. Even setting aside formal waiver and estoppel rules, if defendant did not always insist on correction of all discrepancies, then it is all the more uncertain whether defendant's refusals here meant that it insisted on correction of all discrepancies, even the minor ones. Moreover, the demand letters did not clearly state the nature of every discrepancy they cited. Demand letter #1 listed not only two particular discrepancies, but also unspecified "more discrepancies." Shaikh Aff., Ex. B. Demand letter #3 listed one discrepancy, "GARMENT'S CERT.UNQUOTE THE DOCUMENTS HAVE BEEN FAXED," *Id.*, Ex. J, that was unclear even to defense counsel, *see* Tr. at 29. In fulfilling its UCP § 14(d) duty to state which discrepancies doomed each payment demand, defendant cannot rely on its incorporation of inconsistently and incompletely specific listings of various discrepancies in the demand letters.

Plaintiffs must be in strict compliance with UCP Article 14 to assert their right to demand payments under the letters of credit. The Court is unwilling to view the UCP as creating such asymmetrical rights and duties that defendant could assert its right to refuse payments without being in similar compliance with UCP Article 14. There is sufficient uncertainty regarding whether defendant's refusals were proper under the UCP that defendant is not entitled to a dismissal predicated on the propriety of its refusals of plaintiffs' payment demands. With this holding sufficient for a denial of the motion as to plaintiffs' claims of breach under the UCP and contract law, *see* Compl., Counts I, II, III, "the Court need not reach the issue of whether the defects relied on by [defendant] were so insignificant as to not relieve [defendant] of its obligation to pay," nor any other reasons why payment may have been required or not required in spite of any discrepancies. *Trifinery v. Banque Paribas*, 762 F.Supp. 1119, 1123 (S.D.N.Y. 1991) (declining to address plaintiffs de-

fenses of its discrepant documents because defendant's summary judgment motion was resolved, in plaintiffs favor, by the finding of unresolved factual issues regarding whether defendant waived the discrepancies).

### C. Fraud and Conspiracy Claims

In the fraud claim, *see* Compl., Count IV, ¶¶ 32–36, plaintiffs allege that defendant "knew that Plaintiffs were relying upon the irrevocable commitment" of defendant embodied in the ILCs, *id.* ¶ 33, but "never intended to comply," *id.* ¶ 35. "Though defendants will obviously not admit to their fraud, the circumstances are such that defendants knowingly allowed the conversion of plaintiffs' merchandise, and this matter which raises factual questions will be probed through discovery, which has not yet taken place," plaintiffs argue. Pls.' Mem. at 10.

The conspiracy claim, *see* Compl., Count V, ¶¶ 37–48, only covers plaintiff Imagen, ILC # 2, and the shipments from Imagen to Platinum. Plaintiff Imagen alleges that defendant's breaches of ILC # 2 evidenced "a conspiracy and wrongful arrangement," *id.* ¶ 38, between defendant and Platinum "to defraud Plaintiff Imagen," *id.* ¶ 47, and to procure Imagen goods for Platinum while avoiding payment to Imagen, *id.* ¶ 39. Specifically, defendant "knew or should have known" that the ILC # 2 customer, Platinum, "was not credit worthy," *id.* ¶ 41, and defendant acted "in bad faith," *id.* ¶ 46, in refusing to pay Imagen from Platinum's credit line by giving Imagen "false, misleading and untimely information . . . regarding Plaintiff[']s presentation and demand for payment," *id.* ¶ 44.

At hearing, plaintiff's counsel elaborated on its theory of defendant's motivation for the alleged bad-faith refusals of the payment demands:

> THE COURT: Are you alleging fraud on the part of the bank with the purchaser of the goods?
>
> MR. LANGER: What we're alleging . . . is sufficient facts and inferences

from the record here that the bank during the period of time it delayed ultimate rejection, . . . had knowledge that the goods were already passed to its buyer. . . . [T]here is sufficient evidence of fraud here which . . . does create inferences on the part of the bank as to what they knew and when they knew what they knew. . . .

> [T]he bank was cutting its losses by coming up with a basis after the fact to reject and dishonor the letters of credit because . . . it couldn't get recovery or payment or reimbursement from its own client. That's where there is an inference of fraud as well.

Tr. at 15–17.

■ The fraud and conspiracy claims thus are based on defendant's alleged contract breaches and the inferences that might flow from the fact of those breaches. Other facts alleged, such as that defendant "knew or should have known" of Platinum's insolvency, *see* Compl. ¶ 41, simply do not add any inferential power because they are nothing more than explanations of why and how defendant might have found its ILC breaches financially rewarding. Most contract breaches, if unredressed, save the breacher money. Proof that the breacher had a financial incentive for breaching does not turn a contract claim into a fraud or conspiracy claim. *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993) ("We decline . . . to infer fraudulent intent from the fact that [defendant] made a number of contracts . . . and never performed any of them. A contract may be breached for legitimate business reasons. Contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages.")

"[T]he only 'fact' alleged to show that these representations were false when made is the bald assertion that [defendant] failed to so perform. This is patently inadequate on its face to establish either falsity or intent; indeed, if it were other-

wise, every complaint for breach of contract would *ipso facto* state a claim for fraud." *Champion Titanium Horseshoe, Inc. v. Wyman–Gordon Inv. Castings, Inc.,* 925 F.Supp. 188, 190 (S.D.N.Y.1996) (denying motion to amend complaint to assert fraud claim that was not "legally adequate" under New York law). "Plaintiff[s'] general claim that [defendant] never intended to perform its duties under the contract ... does not elevate this basic claim for breach of contract to the level of deliberate fraud." *Lomaglio Assocs. v. LBK Marketing Corp.,* 892 F.Supp. 89, 95 (S.D.N.Y.1995) (dismissing fraud claim under New York law, even though plaintiff stated a breach of contract claim, because fact of breach is insufficient to support claim that defendant's promise to perform was fraudulent). *See also PI, Inc. v. Quality Prods., Inc.,* 916 F.Supp. 332, 332 (S.D.N.Y.1996) (holding that under New York law, "more than a general allegation of lack of intent to carry out a contractual promise is necessary" for a contract breach to support a fraud claim).

■ Courts do not hesitate to dismiss fraud-based claims resting wholly on contract breaches and any inferences that might flow from the fact of those breaches. *See, e.g., Mills,* 12 F.3d at 1176 (affirming dismissal of securities fraud claims for failure to state a claim); *PI, Inc.,* 916 F.Supp. at 332 (reaffirming dismissal of fraud claim under New York law). The presence of a pattern of multiple breaches does not alter this principle that allegations of financially rewarding breaches are insufficient to state a fraud claim. *See, e.g., Mills,* 12 F.3d at 1176 (dismissing even though defendant "made a number of contracts ... and never performed any of them").

Plaintiffs' allegations of financially rewarding breaches thus are insufficient to support a claim that defendant acted fraudulently in committing those breaches. The conspiracy claim rests on not only these inadequate allegations of fraud, but also on wholly unsupported conjecture that Platinum played some role in the Imagen–

MashreqBank payment demand dispute. Accordingly, this Court must dismiss the portion of the complaint that states fraud and conspiracy claims, *see* Compl. Counts IV, V, as "duplicative of its breach of contract claim because it allege[s] merely that [defendant] had not intended to fulfill its express contractual obligations." *PI, Inc.,* 916 F.Supp. at 332.

## III. CONCLUSION

For the reasons given above, defendant's motion to dismiss is granted in part, as to the fraud and conspiracy claims in counts IV and V of the complaint, and denied in part, as to the remainder of the complaint.